## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Bulk Process Equipment,                                         Civil No. 10-4176 (DWF/JSM)

          Plaintiff,

v.                                                                                      **MEMORANDUM**
                                                                      **OPINION AND ORDER**

Earth Harvest Mills, Inc. d/b/a
Dakota Prairie Organic Flour Co.,

          Defendant.

_____

D. Sherwood McKinnis, Esq., and Trent L. Pepper, Esq., Lindberg & McKinnis, PA, counsel for Plaintiff.

Caren L. Stanley, Esq., Vogel Law Firm, counsel for Defendant.

_____

## INTRODUCTION

      This matter is before the Court on Defendant Earth Mills, Inc. d/b/a Dakota Prairie Organic Flour Co.'s Motion to Dismiss, or in the Alternative, to Transfer Venue. For the reasons set forth below, the Court denies the motion.

## BACKGROUND

      Plaintiff is a Minnesota corporation with a principal place of business in Isanti, Minnesota. (Compl. ¶ 1.) Plaintiff is in the business of designing, manufacturing, and selling dry bulk product handling equipment. (Aff. of Wayne Anderson ("Anderson Aff.") ¶ 2.) Defendant is a North Dakota corporation with its principal place of business

in Harvey, North Dakota.  (Compl. ¶ 2.)  Defendant develops and mills specialty and organic flours, including gluten-free flours, at its facility in Harvey, North Dakota.  (Aff. of Grayson Hoberg ("Hoberg Aff.") ¶¶ 3, 6.)

Beginning in April 2007 and continuing through February 2010, Plaintiff sold various pieces of equipment to Defendant, including diverter valves, blowers, sensors, and other products, for use in Defendant's North Dakota facility.  (Hoberg Aff. ¶ 5; Anderson Aff. ¶ 4.)[1]  During that time period, Plaintiff sold Defendant $426,279.90 in equipment.  (Anderson Aff. ¶ 5, Ex. A.)  The invoices for each of these products identified Plaintiff's address in Isanti, Minnesota.  (*Id.*)  The equipment ordered was designed and constructed in Minnesota and shipped to Defendant from Minnesota.  (*Id.*)

In late 2009, Defendant contracted with Plaintiff for the purchase of equipment (a transfer system) to be installed in Defendant's Gluten-Free room in its organic flour facility in Harvey, North Dakota.  (Hoberg Aff. ¶ 6; Anderson Aff. ¶ 7.)  Plaintiff claims that Defendant contacted Plaintiff to request that Plaintiff design and construct this equipment for Defendant.  (Anderson Aff. ¶ 7.)  Defendant contends, and Plaintiff disputes, that Defendant specifically requested that "classified" electrical components be used for this order.  (Hoberg Aff. ¶ 6; Anderson Aff. ¶ 7.)  Plaintiff designed and constructed the transfer system in Minnesota and shipped it to Defendant's North Dakota

---

[1]     Defendant contends that it first became aware of Plaintiff when a representative of Plaintiff visited Defendant's Harvey, North Dakota facility to introduce themselves to Defendant.  (Hoberg Aff. ¶ 4.)

facility. (Anderson Aff. ¶ 8.) The equipment as delivered had "non-classified" electrical components. (Hoberg Aff. ¶ 9.) Defendant hired a third-party electrician to install the equipment, but the electrician refused to hook up the equipment because he believed that it would not be approved by the North Dakota Electrical Board because it had "non-classified" electrical components. (*Id.*) Defendant contends that it has been unable to use the equipment provided by Plaintiff. (*Id.* ¶ 10.) Between November 2009 and January 2010, Plaintiff submitted invoices to Defendant in the amount of $169,318.09 for the transfer system. (Anderson Aff. ¶ 9 & Ex. A.) Defendant has not paid the $169,318.09. (*Id.*)

Plaintiff brought this action alleging claims for breach of contract and unjust enrichment. Plaintiff alleges that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Compl. ¶ 3.) Defendant now moves to dismiss the action for lack of personal jurisdiction or, in the alternative, to transfer the action to the United States District Court for the District of North Dakota.

## DISCUSSION

### I. Personal Jurisdiction

When a defendant challenges personal jurisdiction, the plaintiff has the burden to show that personal jurisdiction exists. *Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir. 1996) (citing *Gould v. P.T. Krakatau Steel,* 957 F.2d 573, 575 (8th Cir. 1992)). To survive a motion to dismiss for lack of personal jurisdiction, however, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant. *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.,* 89 F.3d 519,

522 (8th Cir. 1996) (citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,* 51 F.3d 1383, 1387 (8th Cir. 1995)).

When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings; "the court may inquire, by affidavits or otherwise, into the facts as they exist." *Stevens v. Redwing,* 146 F.3d 538, 543 (8th Cir. 1998) (quoting *Land v. Dollar,* 330 U.S. 731, 735 n.4 (1947)). For the purposes of determining whether the plaintiff has made a prima facie showing of personal jurisdiction, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. *Digi-Tel,* 89 F.3d at 522 (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir. 1991)).

In determining whether a court has personal jurisdiction over a non-resident defendant, a court must ordinarily satisfy both the requirements of the state long-arm statute and of federal due process. *Northrup King,* 51 F.3d at 1387. The Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process, and therefore a court in Minnesota need only evaluate whether the requirements of due process are satisfied. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.,* 65 F.3d 1427, 1431 (8th Cir. 1995).

Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945) (internal quotations omitted). The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court

there.  *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).  It is essential in each case that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

A court may use one of two different analyses to determine whether a defendant's contacts with the forum state establish personal jurisdiction.  *Epps v. Stewart Info. Servs. Corp.,* 327 F. 3d 642, 648 (8th Cir. 2003).  In a general jurisdiction case, a defendant maintains such "continuous and systematic" contacts with a state that it becomes subject to the jurisdiction of that state's courts for any purpose.  *Morris v. Barkbuster, Inc.,* 923 F.2d 1277, 1281 (8th Cir. 1991) (quoting *Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 414 n.9, 416, 418-19 (1984)).  Specific jurisdiction, on the other hand, requires that the defendant has "purposely directed" its activities at residents of the forum and that the litigation results from alleged injuries that "arise out of or relate to" those activities.  *Wessels,* 65 F.3d at 1432 (quoting *Burger King,* 471 U.S. at 472).

Regardless of which analysis is used, the Eighth Circuit applies a five-factor test in determining whether the exercise of personal jurisdiction would pass constitutional muster:  (1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of contacts; (3) the source and connection of the cause of action with those contacts; and, to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties.  *Wessels,* 65 F.3d at 1432.  The first three factors are of primary importance, while the last two are "secondary factors."  *Minn. Mining & Mfg.*

5

*Co. v. Nippon Carbide Indus. Co.,* 63 F.3d 694, 697 (8th Cir. 1995). The third factor distinguishes between specific and general jurisdiction. *Digi-Tel,* 89 F.3d at 523 n.4 (citing *Wessels,* 65 F.3d at 1432 n.4).

### A. Defendant's Contacts with Minnesota

Defendant is a North Dakota corporation with its principal place of business in Harvey, North Dakota. Defendant is not registered to do business within the State of Minnesota and does not have property, offices, or employees in Minnesota. (Hoberg Aff. ¶ 13.) Defendant contends that the great majority of its customers are located on the East Coast, West Coast, and internationally. (*Id.* ¶ 12.) Defendant also contends that in 2010, it had two customers in Minnesota and did $10,737.37 in sales to those customers. (*Id.*) Defendant asserts that its Minnesota sales amounted to less than 1% of its total sales for 2010. (*Id.*)

Plaintiff contends that Defendant maintains a website, on which it advertises its products and provides a means for customers to submit electronic orders, promotes its products on Facebook, and uses an eBay website to sell products. (*Id.* ¶ 15.) In 2010, Defendant's total internet sales totaled $5,529.73, $474.88 of which was for products shipped to Minnesota locations. (Supp. Aff. of Grayson Hoberg ("Hoberg Supp. Aff.") ¶ 6.)

Between April 2007 and February 2010, Defendant and Plaintiff engaged in several business transactions. In particular, Defendant purchased $426,279.90 in equipment from Plaintiff. (Anderson Aff. ¶ 5.) With respect to those sales, Plaintiff contends that Defendant knew that Plaintiff would design and construct the equipment

6

that Defendant ordered in Minnesota and that Plaintiff would ship those products to Defendant from Minnesota.  (*Id*.)  In late 2009, Defendant approached Plaintiff to purchase equipment to be installed in Defendant's Gluten-Free room at its Harvey, North Dakota facility.  (Hoberg Aff. ¶ 6. )  Plaintiff designed and constructed the equipment in Minnesota and shipped it to Defendant's North Dakota facility.  (Anderson Aff. ¶ 8.)  Plaintiff submitted invoices for this equipment totaling $169,318.09.  (*Id*. ¶ 9, Ex. A.)

Moreover, Plaintiff mailed invoices to Defendant from Minnesota, and Defendant mailed payments to Plaintiff in Minnesota.  (*Id*. ¶ 12.)  Plaintiff has also submitted evidence that during the course of its dealings with Defendant, Defendant made dozens of phone calls and sent dozens of e-mails to Plaintiff in Minnesota, many of which were related to the equipment that is at the center of this litigation.  (*Id*. ¶ 10.)

**B.     Personal Jurisdiction over Defendant**

Plaintiff asserts that both specific and general jurisdiction exist here.  The Court first considers the nature, quality, and quantity of Defendant's contacts with Minnesota.  Based on the preceding description of the record, it is apparent that Defendant entered into a business relationship with Plaintiff whereby Defendant ordered equipment from Plaintiff in Minnesota, communicated with Plaintiff via e-mail and telephone in Minnesota, and paid Plaintiff in Minnesota.  In addition, Defendant contacted Plaintiff in 2009 to purchase specific equipment for its Gluten-Free room, and communicated with Plaintiff in Minnesota regarding this equipment via e-mail and telephone.

The Court concludes that these contacts with Minnesota are not random, fortuitous, or attenuated.  Instead, they demonstrate an intentional and ongoing

relationship between Defendant and Plaintiff, a Minnesota company. The Court therefore concludes that the nature, quality, and quantity of Defendant's contacts with Minnesota favor the exercise of personal jurisdiction over Defendant. *See, e.g., Wessels*, 65 F.3d at 1433-34).[2]

The Court also considers the relationship between the cause of action and Defendant's contacts with Minnesota. Plaintiff alleges that Defendant breached its contract and was unjustly enriched when Defendant failed to pay for the equipment Defendant ordered in 2009 for its Gluten-Free room. These claims directly relate to Defendant's contacts with Minnesota. Therefore, this factor supports the Court's exercise of jurisdiction over Defendant.

In addition, the final two factors, which are accorded less weight in the Court's analysis, also support jurisdiction. Defendant has allegedly failed to pay an invoice for equipment provided by Plaintiff, which has allegedly deprived Plaintiff of money it

---

[2] Defendant makes additional arguments against the Court's exercise of personal jurisdiction. First, Defendant argues that over the course of its relationship with Plaintiff, none of Defendant's employees met with Plaintiff's representatives outside of North Dakota. The absence of physical entry into Minnesota, however, is an insufficient reason to permit Defendant to avoid the Court's exercise of jurisdiction. *See Burger King*, 471 U.S. at 476 ("Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State."). Second, Defendant argues that Plaintiff was the aggressor in their business relationship. In particular, Defendant contends that Plaintiff first approached Defendant in North Dakota. Regardless of who initiated the relationship, however, Plaintiff has submitted evidence that Defendant initiated the purchase of equipment in 2009 that has led to this lawsuit. In addition, the relationship between the parties involved numerous communications between Defendant in North Dakota and Plaintiff in Minnesota.

claims it is owed. Minnesota has an obvious interest in providing a forum in which Plaintiff, a Minnesota company, may litigate its claims. *See Northrup*, 51 F.3d at 1389. In addition, the convenience of the parties favors jurisdiction. A plaintiff is normally afforded its selected forum. As discussed below with respect to the Court's analysis of the motion to transfer, some witnesses and evidence are located in Minnesota; other witnesses and evidence are located outside of Minnesota. Any inconvenience to defendants in litigating in Minnesota would be similarly experienced by Plaintiff if required to litigate elsewhere.

Based on the record before it, the Court concludes that Plaintiff has made a prima facie showing that Defendant is subject to the specific jurisdiction of the Court. The Court concludes that Defendant purposefully directed its activities toward Minnesota and should have reasonably anticipated being haled into court in Minnesota in a dispute related to its business relationship with Plaintiff, and in particular with respect to the November 2009 order for equipment for which the invoices remain unpaid. The Court recognizes that Defendant's contacts with Minnesota may not rise very far above the minimum contacts necessary to establish jurisdiction. The Court's task, however, is not to determine the "best" forum for a suit, but to determine whether sufficient minimum contacts exist so that a suit against Defendant in Minnesota does not offend traditional

notions of fair play and substantial justice. Such contacts exist here. Therefore, the Court denies Defendant's motions to dismiss.[3]

## II.    Venue

Defendant asserts that venue in this district is improper. Under 28 U.S.C. § 1391(a), venue in diversity cases is only appropriate in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). When a defendant seeks dismissal for improper venue, it bears the burden of demonstrating that the plaintiff's chosen venue is improper. *See United States v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947).

The Court concludes that venue is proper in this district under § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Minnesota. In particular, the parties entered into an agreement whereby Plaintiff, a Minnesota corporation, was to design and build equipment in Minnesota. The particular agreement at issue in this case involved a request made by Defendant for Plaintiff to design and construct equipment for its Gluten-Free facility. That equipment was then

---

[3]    Because the Court has found that specific jurisdiction exists, the Court need not and does not reach the issue of whether the Court has general personal jurisdiction over Defendant.

designed and constructed in Minnesota and, when finished, shipped to Defendant in North Dakota. Further, Defendant failed to pay Plaintiff in Minnesota. Based on these activities, the Court concludes that venue is proper.[4]

### III. Motion to Transfer

Defendant also moves, in the alternative, to transfer this action to the District of North Dakota pursuant to 28 U.S.C. § 1404(a). That section provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). When deciding a motion to transfer pursuant to § 1404(a), the Court must consider the convenience of the parties, the convenience of the witnesses, and the interests of justice. *See Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). In considering these factors, the Court must make a "case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id*. The burden is on the party seeking the transfer "to show that the balance of factors 'strongly' favors the movant." *Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999). Here, there is no dispute that this case "might have been brought" in North Dakota. The Court therefore considers the relevant transfer factors.

---

[4]   Defendant argues that a substantial part of the events or omissions giving rise to the claim occurred in North Dakota. Section 1391(a)(2), however, does not require that there be a single appropriate district for venue, but instead allows for proper venue in more than one district. *See, e.g.*, *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995).

"[S]ection 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Id.* Normally, there is a presumption in favor of the plaintiff's forum. *Id.* Defendant asserts that transfer is necessary because Minnesota is only convenient for Plaintiff and North Dakota is the location of the subject matter of this action. Plaintiff asserts that Minnesota is not an inconvenient forum, even for Defendant, given the geographical proximity of Minnesota and North Dakota. The Court finds that the convenience of the parties weighs in favor of maintaining this action in Minnesota because transfer to North Dakota would simply shift the inconvenience to Plaintiff.

The convenience of witnesses is an important factor for the Court and the parties because it affects the access to sources of proof. *Id.* at 1121. In considering the convenience of witnesses, courts have focused on the number of non-party witnesses, the location of all witnesses, and the preference of courts for live testimony as opposed to depositions. *See id.* Defendant argues that this factor weighs in favor of transfer because most, if not all, witnesses, such as those who could testify on the issue of whether the equipment met North Dakota's standards for "classified" equipment, reside in North Dakota. (Hoberg Aff. ¶ 14.) In addition, Defendant argues that North Dakota will afford greater accessibility to records and documents. Plaintiff points out, however, that the issue of whether the equipment met North Dakota's standards for "classified" equipment is irrelevant because Plaintiff contends, in this action, that Defendant did not actually order classified equipment.

The Court notes that it appears likely that fact witnesses will reside in both Minnesota and North Dakota. In addition, the location of records and documents do not materially impact the convenience analysis in this case. Thus, the convenience of the witnesses does not weigh in favor of transferring this action to the District of North Dakota.

The Court must also evaluate what venue will best promote the interests of justice. *Id*. This factor is weighed "very heavily." *Id.* A number of relevant considerations include judicial economy, the plaintiff's choice of forum, the costs of litigating in each forum, obstacles to a fair trial, choice of law issues, and the advantages of having a local court determine questions of local law. *See Terra Int'l*, 199 F.3d at 696. Defendant argues that the interests of justice weigh in favor of transfer; in particular that North Dakota law will apply, comparative costs to the parties litigating in each forum favors North Dakota, transfer will not delay the case, and that plaintiff's choice of forum should be given less weight here because the operative events giving rise to the lawsuit occurred in North Dakota.

As the Court has already explained, a substantial part of the events or omissions giving rise to the claims in this action occurred in Minnesota. Therefore, the Court recognizes the interest in protecting Plaintiff's choice of forum. In addition, as explained above, Minnesota has an interest in providing a forum for Plaintiff. On balance, the Court concludes that maintaining the action here would promote the interests of justice and the Court finds that this factor does not weigh in favor of transferring this action to the District of North Dakota.

## **CONCLUSION**

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1. Defendant's Motion to Dismiss, or in the Alternative, to Transfer Venue (Doc. No. [4]) is **DENIED**.

Dated:  May 17, 2011                    s/Donovan W. Frank
                                        DONOVAN W. FRANK
                                        United States District Judge